**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **CAROLYN WRIGHT LAMAR,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TROY MEINK,** *Secretary of the Air Force,* **KERRI FOX, and KIMBERY A. HARRISON,**<br><br>*Defendants.* | **CIVIL ACTION NO. 5:26-cv-00209-TES** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND PLEADING**

In this multifaceted discrimination lawsuit, pro se Plaintiff Carolyn Wright Lamar, an African American woman, relies on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12112 *et seq.* ("ADA"), to sue Troy Meink, the Secretary of the Air Force ("Secretary Meink"), and two of her supervisors, Kerri Fox ("Fox") and Kimberly A. Harrison ("Harrison") (collectively, "Defendants"). [Doc. 1, p. 5]; [Doc. 1-4, p. 1]. Defendants concede that "[a]t all relevant times, Plaintiff was employed by the [United States Air Force] as an Acquisition Support Specialist at the Warner Robins Air Logistics Complex Maintenance and Acquisition Program Office." [Doc. 11, p. 1]; *see also* [Doc. 1, p. 5]; [Doc. 1-4, p. 1]; [Doc. 1-5, p. 1].

Generally, Plaintiff claims Defendants wrongfully discriminated against her based on her race and color by failing to grant her two days of telework each week like her white colleagues and by failing to accommodate her physical and mental disabilities. [Doc. 1, pp. 6–7]; [Doc. 1-4, p. 1]; [Doc. 1-5, p. 1]; [Doc. 1-6, p. 1]. In addition to these two alleged instances of discrimination, Plaintiff also alleges that Defendants "harassed" her, but that's the extent of her allegations on that front. *See McCullough*, *infra*; *see e.g.*, [Doc. 1, p. 5]. Defendants now seek dismissal of Plaintiff's entire lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] [Doc. 1]; [Doc. 11, pp. 2–4]. For the reasons discussed more fully below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss, but it affords Plaintiff until ***November 25, 2026***, to amend her pleading in accordance with the rulings and guidance in this order. [Doc. 11].

## FACTUAL BACKGROUND

Again, Plaintiff is proceeding pro se. So, her pleading is afforded a certain degree of leniency. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). That leniency, though, does not give the Court license to serve as de facto counsel for her or to rewrite any of her deficient allegations so that they state plausible claims. *See GJR Investments, Inc. v.*

---

[1] On November 4, 2026, Plaintiff requested a second extension of time to file her response to Defendants' motion to dismiss. [Doc. 11]; [Doc. 15]. The Court granted an extension until November 25, 2026. [Doc. 16]. However, under the Court's local rules, motions "in which the Court may clearly determine from the record before it the relative legal positions of the parties so as to obviate the need for the filing of opposition thereto" are exempted from the standard briefing schedule. LR 7.7, MDGa.

*Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Additionally, a pro se plaintiff "must be given at least one chance to amend . . . before the district court dismisses [a lawsuit] with prejudice"—at least, that is, where "a more carefully drafted [pleading] might state a claim." *Silberman v. Mia. Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019). With that leniency in mind, Plaintiff asserts the following factual allegations to support her Title VII- and ADA-based claims.

In her pleading for this case, not all, but *most* of Plaintiff's allegations are factually unadorned legal conclusions. *See, e.g.*, *Johnson v. Oconee Ctr. Cmty. Serv. Bd.*, No. 5:24-cv-00208-TES, 2024 WL 4392378, at *5 (M.D. Ga. Oct. 3, 2024) ("Legal conclusions like these and many others scattered throughout [a pleading] are not entitled to the presumption of truth.") (citing *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018)). Plaintiff begins by generally stating that on several dates from the months of May, July, August, and October 2021, she was "subjected to disparate treatment" and "harassed." [Doc. 1, pp. 6–7]; *see also* n.3, *infra*. She clarifies, however, that the harassment she allegedly suffered was not sexual but was because of her race and color and because she was "having health issues associated with [COVID]." [Doc. 1, pp. 5, 7]. Then, she alleges that Defendants failed to accommodate her disability and subjected her to unequal terms of employment. [*Id.* at p. 6]. These are textbook conclusory allegations.

Then, there's her formal complaint lodged with the Equal Opportunity Office at the Robins Air Force Base ("the Base").[2] While thin here as well, she provides a few more specific allegations. According to a memorandum from the Base, Plaintiff initially filed an informal complaint based on race, color, and disability on September 9, 2021. [Doc. 1-6, p. 1]. Then, in a formal complaint filed on January 26, 2022, Plaintiff recalls four incidents to explain how she believes her supervisors, Fox and Harrison, discriminated against her because she's an African American with "light skin" and "mental and physical" disabilities. [Doc. 1-5, p. 1].

First, Plaintiff says that on May 19, 2021, Fox—whom Plaintiff describes as her acting first-line supervisor—sent her an email. [Doc. 1, p. 4]; [Doc. 1-5, p. 1]. Although Plaintiff alleges that she "felt the tone of [Fox's] email was inappropriate," she does not specifically allege what Fox wrote. [Doc. 1-5, p. 1]. The only insight Plaintiff provides regarding the email was that she thinks it was "utilized as a tool to document performance issues." [*Id.*]. Second, Plaintiff says that on July 28, 2021, she "became aware" that her "white" or "non-African descent" co-workers were allowed to telework for two days a week. [*Id.*]. Plaintiff mentions how another African American co-worker, Devon Josey, was also "excluded" from teleworking two days per week. [*Id.* at p. 2].

[2] Along with her pleading, Plaintiff submitted two versions of the formal complaint she filed with the Base. *See, e.g.*, [Doc. 1-4]; [Doc. 1-5]. One is handwritten. [Doc. 1-4]. The other is typed. [Doc. 1-5]. Even though both provide nearly identical information, the typed version offers just a little more. So, the Court pulls Plaintiff's allegations from the typed version. [*Id.*].

Third, on August 13, 2021, Plaintiff says she became aware that Harrison—her second-line supervisor—denied her request to telework two days per week. [Doc. 1, p. 4]; [Doc. 1-5, p. 1]. And fourth, Plaintiff says that on August 13, 2021, Fox's "input negatively impacted [Plaintiff's] request for telework."[3] [Doc. 1-5, p. 1]. As to what this "input" was, Plaintiff doesn't say. To resolve her complaint, Plaintiff told the Base that she would accept a within-base transfer to "a non-discriminatory position" relative in scope to her qualifications. [*Id.*]. Then, as for Fox's comments—which Plaintiff, without elaborating any further, describes as "degrading" and "embarrassing" and as causing "ongoing [work-related] stress"—she seeks the maximum compensatory damages allowed by law. [Doc. 1, p. 8]; [Doc. 1-5, p. 2].

In the Base's memorandum responding to Plaintiff's complaint, the Base was clear that the only "accepted" allegation was from July 28, 2021, where Plaintiff says she "became aware that her White co-workers were allowed to telework for [two] days a week[.]" [Doc. 1-6, pp. 1–2]. The Base went on to inform Plaintiff that "[t]he Air Force is required to conduct an impartial and appropriate investigation of the accepted portion of [her] complaint within 180 calendar days of the filing of the complaint unless the parties agree in writing to extend the time period." [*Id.* at p. 2]. From there, the Base

[3] Aside from these dates—May 19, 2021; July 28, 2021; and August 13, 2021—that Plaintiff specifically mentioned in her complaint to the Base, Defendants argue that she failed to properly exhaust her administrative remedies for—and thus cannot rely on—any other date on which she claims she suffered discrimination or harassment. [Doc. 1, p. 6]; [Doc. 1-5, p. 3]; [Doc. 11, pp. 9–10]. The Court addresses this argument in its discussion on Plaintiff's Title VII-based harassment claim. *See* Discussion, Section (C)(1).

forwarded Plaintiff's complaint to the Investigations and Resolutions Directorate for the Department of Defense. [*Id.*].

## LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction. "If [a] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3). Attacks on subject-matter jurisdiction come in two forms: (1) facial attacks and (2) factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). Where sovereign-immunity grounds warrant dismissal of a particular claim, dismissal pursuant to Rule 12(b)(1) is appropriate because no subject-matter jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists.") (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996).

### B. Federal Rule of Civil Procedural 12(b)(6)

When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a pleading as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). When doing so, courts are to construe the reasonable inferences from them in the light most favorable to the plaintiff. *Hawthorne v. Mac*

*Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Through Rule 12(b)(6), though, a defendant may "test the facial sufficiency" of the pleading by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the [pleading] still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a pleading will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough*, 907 F.3d at 1333 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Now, whether a pleading states a claim for relief is measured by reference to the standard set forth in Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

To decide whether a pleading survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that [a] plaintiff is entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

When drafting a pleading, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a pleading as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their

conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a pleading "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, a pleading that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a pleading must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

Before wading any further, some rather sizeable concerns emanate from Plaintiff's lawsuit with respect to *who* can be held liable and for *what* claims. To address them, the Court starts with a brief statutory primer for both Title VII and the ADA.

### A. Title VII

Title VII, which extends to civilian employees "in [the] military departments," makes it unlawful for *an employer* "to discriminate against any individual with respect

to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1), 2000e-16(a) ("All personnel actions affecting employees . . . in military departments . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."); *see also Stinson v. Hornsby*, 821 F.2d 1537, 1539 (11th Cir. 1987) (recognizing that the "military departments" consist of civilian employees) (citing *Gonzalez v. Dep't of the Army*, 718 F.2d 926 (9th Cir. 1983)).

Title VII, however, does not allow for *liability* against individuals. *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (holding, "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act"); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("Individual capacity suits under Title VII are . . . inappropriate."); *Fodor v. D'Isernia*, 506 F. App'x 965, 966 (11th Cir. 2013) ("We have held that individual employees are not subject to liability under . . . Title VII . . . .").

Therefore, "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by *naming the employer directly*." *Busby*, 931 F.2d at 772 (emphasis added). Yes, Plaintiff may, as she has done, name Secretary Meink, Fox, and Harrison as defendants, but since they cannot be held individually *liable* under Title VII, the Court, for clarity's sake, **DIRECTS** the Clerk of Court to **TERMINATE** those individuals as

parties to this lawsuit and **AMEND** the case name as follows: *Carolyn Wright Lamar v. The United States Air Force*.[4]

**B. ADA**

Similarly, the ADA doesn't allow for individual liability either, but the fact that Plaintiff named individuals with respect to her ADA claim is but one wrinkle. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) ("We hold that the [ADA] does not provide for individual liability, only for employer liability."); *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007) ("In light of our construction of Title VII . . . we also have held that individual defendants are not amenable to private suit for violating the anti-discrimination provision of . . . the ADA."); *Fodor*, 506 F. App'x at 966 ("We have held that individual employees are not subject to liability under . . . the ADA.").

The ADA says: "No *covered entity* shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). As to Plaintiff's ADA claim against *her* employer—the Air Force—she can't bring such a claim. Under the ADA, "[t]he term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." *Id.* at §

[4] Considering this change, from here on out, the Court will refer to the defendant as the "Air Force" instead of the collective "Defendants" unless a specific allegation pertains to Fox or Harrison.

12111(2). "The term 'employer,'" however, "does not include . . . the United States [or] a corporation wholly owned by the government of the United States." *Id.* at § 12111(5)(B)(i).

A suit against a federal agency or against an officer of a federal agency in his or her official capacity constitutes a suit against the United States, and such suits are not permitted under the ADA. *See, e.g., Kemer v. Johnson,* 900 F. Supp. 677, 681 (S.D.N.Y. 1995), *aff'd,* 101 F.3d 683 (2nd Cir. 1996), *cert. denied*, 519 U.S. 985 (1996); *Govan v. Principi*, No. 1:04-CV-1569-CAM, 2005 WL 8155548, at *7 (N.D. Ga. 2005). In other words, "Congress has not waived sovereign immunity for ADA claims against the federal government." *Wilkerson v. Jackson*, No. CV 121-186, 2022 WL 377987, at *3 (S.D. Ga. Jan. 11, 2022) (citing *Govan*, 2005 WL 8155547, at *7), *report and recommendation adopted*, No. CV 121-186, 2022 WL 363880 (S.D. Ga. Feb. 7, 2022). Since Secretary Meink, Fox, and Harrison are immune from suit under the ADA, Plaintiff's ADA claim must be **DISMISSED** for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

"Though Plaintiff's ADA claim cannot stand because the ADA does not apply to agencies of the United States," the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* ("RA"), "also prohibits discrimination against the disabled in the employment context." *Kemer*, 900 F. Supp. at 681 (citing 29 U.S.C. § 794(a)); [Doc. 11, p. 7 (citing *Shiver v. Chertoff*, 549 F.3d 1342, 1433 (11th Cir. 2008))]. Put simply, the RA applies to federal agencies like the Air Force. *Kemer*, 900 F. Supp. at 681 (citing 29 U.S.C. § 794(a)). Accordingly, because

Plaintiff is proceeding pro se, the Court will **CONSTRUE** her pleading to assert a claim under the RA. The RA prohibits federal agencies from discriminating in employment against individuals with disabilities. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (citation omitted). The standard for determining liability under the RA is the same as that under the ADA. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). Thus, cases involving the ADA are precedent for those involving the RA. *Id.* at 1305 n.2; *Dickerson v. Sec'y, Dep't of Veterans Affs. Agency*, 489 F. App'x 358, 360 (11th Cir. 2012).

However, notwithstanding her pro se status, the Court will not, as discussed above, serve as de facto counsel or rewrite her allegations for her with respect to this construed claim. The responsibility to draft a rule-compliant pleading lies with Plaintiff. *GJR Invs. Inc.*, 132 F.3d at 1369; *see also Silberman*, 927 F.3d at 1132, *supra*. As should be clear by now, courts "are to give liberal construction to the pleadings of [pro se] litigants," but they nevertheless require them "to conform to procedural rules." *Albra*, 490 F.3d 829 (11th Cir. 2007). Again, consistent with this ruling as well as the impending discussion on Plaintiff's Title VII claims, Plaintiff shall have until ***November 25, 2026***, to file any amended pleading with the Court. To be clear, any amended pleading, to the extent she wants to amend or continue with a particular claim, must set forth sufficient, rule-compliant factual allegations for her (1) disparate treatment and harassment claims under Title VII and her (2) RA claim in connection with her allegation that the Air Force discriminated against her by failing to accommodate her

"Long [COVID]" symptoms. *See Silberman*, 927 F.3d at 1132, *supra*; [Doc. 1, p. 6]; *see also Brown v. Roanoke Rehab. & Healthcare Ctr.*, 586 F. Supp. 3d 1171, 1178–80 (M.D. Ala. 2022) (noting, "an employee has a 'disability' under the [RA] when that employee actually has, or is perceived as having, an impairment that is not transitory and minor"). Plaintiff should be mindful that under black letter federal law, an amended pleading supersedes the original and becomes the operative pleading in the case. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted). This means that "the original pleading is abandoned by the amendment, and [it] is no longer a part of the pleader's averments against [her] adversary." *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation omitted); *see also Hoefling v. City of Mia.*, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating, initial pleading "bec[o]me[s] a legal nullity").

### C. The Air Force's Motion to Dismiss

The Air Force's first argument that dismissal is warranted in this case is predicated on the fact that Rule 10 requires a plaintiff to state claims in numbered paragraphs. [Doc. 11, p. 4]. However, where a pro se plaintiff uses a standard form to aid in presenting employment discrimination claims, it's not this Court's practice to "ding" non-compliance with Rule 10. *See, e.g.*, *Hudson v. Macon Bibb Plan. & Zoning Comm'n*, No. 5:24-cv-00259-TES, 2024 WL 4608577, at *2 (M.D. Ga. Oct. 29, 2024). After all, it makes little sense to dismiss a pro se litigant's case for some failure to assimilate allegations "in numbered paragraphs" when that litigant used the proper form "[a]s she

should've." Fed. R. Civ. P. 10(b); *Hudson*, 2024 WL 4608577, at *2. That said, though, *all* plaintiffs—be they pro se or represented—must comply with Rule 8's requirement of "a short and plain statement . . . showing that the pleader *is entitled to relief*." Fed. R. Civ. P. 8(a)(2) (emphasis added).

As the Court discussed in *Hudson*, "after pro se plaintiffs fill in the required information about their [defendants], check the applicable 'boxes' for their claims, and give some ancillary information, there isn't a whole lot of room left for them to provide the factual detail that allegedly supports those claims." 2024 WL 4608577, at *2. That's exactly why the form Plaintiff used in this case instructs her to "write a short and plain statement of *each claim*" and to "[a]ttach additional pages"—if, of course, they're needed to adequately provide the necessary facts of her case.[5] *See id.*; *see, e.g.*, [Doc. 1, p. 6 (emphasis added)]. While the use of a court-provided form may be enough for the Court to overlook how a pro se plaintiff literally "presents" her allegations, pro se status can never be the reason a court shuns and dispenses with Rule 8's requirement. As just stated, Rule 8 is the procedural mechanism that provides a defendant with "fair notice" of the claims and the "grounds" upon which a plaintiff claims entitlement for relief. *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56. With that, the Court turns to the allegations Plaintiff uses to support her Title VII- and

[5] If Plaintiff elects to amend her pleading, the Court hopes she heeds the instruction on the Court's standard form. *See* [Doc. 1, p. 6].

ADA-based claims.

Liberally construed, the gravamen of Plaintiff's complaint is that the Air Force, in violation of Title VII, harassed her and subjected her to her disparate treatment because of her race and color. [Doc. 1, pp. 6–7]. More specifically, Plaintiff claims the Air Force used the fact that she's African American and the color of her skin to deny her a condition or privilege of employment—her request that she be allowed to telework two days a week like her white colleagues. [*Id.* [Doc. 11, p. 4].

**1. Plaintiff's "Allegation" That She Was "Harassed"**

As the Court alluded to above, Plaintiff's bare allegation that she was "harassed," without more, is simply a legal conclusion, and legal conclusions are not entitled to any presumption of truth. *McCullough*, 907 F.3d at 1333 (citation omitted). Therefore, to be consistent with *McCullough*'s a two-step framework, the Court **STRIKES** Plaintiff's bare allegation that she was "harassed," and it **DISMISSES** her Title VII-based harassment claim **without prejudice**. *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see, e.g.*, [Doc. 1, pp. 5, 7].

Should Plaintiff seek to replead that claim, she must do so in an amended pleading. "If a dismissal without prejudice 'has the effect of precluding [a] plaintiff from refiling [her] claim due to the running of" certain deadlines, "the dismissal is tantamount to a dismissal with prejudice.'" *Justice v. United States*, 6 F.3d 1474, 1481 n.15 (11th Cir. 1993) (cleaned up). Here, Plaintiff will likely face hurdles involving applicable

filing deadlines if she fails to replead her harassment claim in *this* lawsuit. *See* [Doc. 1-5, p. 3].

However, as briefly mentioned above, the Air Force contends that many of the dates Plaintiff listed *in her pleading* for this lawsuit but failed to include *in her complaint* to the Base cannot be relied on to support her Title VII-based harassment claim. *See* n.3, *supra*; *compare* [Doc. 1, p. 6], *with* [Doc. 1-5, p. 3]; [Doc. 11, pp. 9–10]. Those unincluded dates from 2021 are: May 4 and 21; July 1; August 6, 12, 16, 19, and 20; October 26 and 27. [Doc. 1, p. 6]. By failing to allege these ten additional dates of discrimination and harassment in her complaint to the Base, the Air Force argues that they have not been administratively exhausted. [Doc. 11, pp. 9–10].

For Title VII claims, a "plaintiff's judicial [pleading] is limited by the scope of the [administrative] investigation which can reasonably be expected to grow out of the [formal complaint lodged with the Base]." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). This is what's been referred to as the "like or related" rule. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928–29 (11th Cir. 1983). Correctly, the Air Force argues that a federal employer must pursue and exhaust administrative remedies before suing for alleged discrimination so that the allegations can be investigated and the employer can attempt to resolve the employee's dispute. [Doc. 11, p. 9 (quoting *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999))]; *see also Evans*, 696 F.3d at 929 ("Among the principles underlying the 'like or related' rule is the belief that the

[appropriate administrative outlet] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."). In layman's terms: an attempt to resolve a dispute in-house before filing a lawsuit in federal court.

Since Plaintiff did not include those ten dates in her complaint to the Base, she cannot rely on them in her judicial pleading to support disparate treatment claims because they are not, as the Air Force argued, administratively exhausted. [Doc. 11, pp. 9–10]. New acts of alleged discrimination raised in a lawsuit are not actionable unless they "amplify, clarify, or more clearly focus the allegations" raised at the administrative level. *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (quoting *Gregory*, 355 F.3d at 1280). Whether Plaintiff may rely on any of those ten dates for any Title VII-based harassment claim will—given its dismissal at this juncture—be a question for another day *if* she decides to replead it. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002); *Johnson*, 2024 WL 4392378, at *5–7.

**2. Plaintiff's Race- and Color-Based Disparate Treatment Claims**

In a disparate treatment case, "an employer discriminates against a worker 'with respect to [her] compensation, terms, conditions, or privileges of employment, because of' the individual's membership in a protected category." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (en banc) (quoting 42 U.S.C. § 2000e-2(a)(1)). Easy enough to understand, it's where "[t]he employer simply treats some

people less favorably than others because of their race [or color].” *Int’l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). As to the allegations Plaintiff put forth in her pleading and in her complaint to the Base regarding her race and color claims under Title VII, the Air Force argues that they fail to state claims for relief. [Doc. 1]; [Doc. 1-5, p.1]; [Doc. 11, p. 4].

To establish a prima facie case of race or color discrimination under Title VII, a plaintiff must ultimately prove: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff’s class more favorably; and (4) she was qualified—as relevant to *this* case—for the sought-after condition or privilege of employment. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000). To this, the Air Force accurately recognizes that Plaintiff does not have to demonstrate or make a prima facie case of discrimination in her pleading. *See Davis v. Mia.-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)); [Doc. 11, p. 5 (citing *Swierkiewicz*, 534 U.S. at 511)]. “The Supreme Court has held that an employment discrimination plaintiff need not plead specific facts establishing a prima facie case under the burden-shifting framework established in *McDonnell Douglas [Corp. v. Green]*.” *Horace v. ARIA*, No. 23-12414, 2024 WL 1174398, at *4 (11th Cir. Mar. 19, 2024) (citing *Swierkiewicz*, 534 U.S. at 510–12); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). That notwithstanding, the Air

Force urges the Court to dismiss this lawsuit on grounds that Plaintiff's pleading fails to meet a baseline plausibility standard that alleges facts that are "sufficient to create an inference of discrimination." [Doc. 11, pp. 5–6 (quoting *Hopkins v. Saint Lucie Cnty. Sch. Bd.*, 399 F. App'x 563, 565 (11th Cir. 2015))].[6]

To support its position, the Air Force tells the Court that Plaintiff "fails to allege a claim of discrimination based on her race and color in three ways." [Doc. 11, p. 6]. First, the Air Force argues that "nowhere does Plaintiff allege that she is *qualified* to telework or that the essential tasks of her job would allow for telework." [*Id.* (emphasis added)]. Well, such allegations go to the fourth prong of the prima facie case that the Air Force admits doesn't have to be made in a pleading. *Rice-Lamar*, 232 F.3d at 842–43; [Doc. 11, p. 5 (citing *Swierkiewicz*, 534 U.S. at 511)].

Second, the Air Force says that "nowhere does [Plaintiff] allege that her white colleagues [who] were allowed to telework were *similarly situated*, in that they had similar positions, tasks, or performance reviews." [Doc. 11, pp. 6–7 (emphasis added)]; *see Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227 (11th Cir. 2019) (en banc). Again,

---

[6] The Court notes that the Air Force's reliance on *Hopkins* seems to stem from the fact that the Eleventh Circuit affirmed a district court's dismissal of a pro se plaintiff's discrimination lawsuit because his pleading "list[ed] conclusory allegations of discrimination and fail[ed] to provide, as required by *Twombly* and *Iqbal*, the 'sufficient factual matter' to establish a prima facie case." 399 F. App'x at 566. Just above that, however, the Eleventh Circuit noted that for a plaintiff "[t]o prevail under Title VII, *evidence* must be presented which is 'sufficient to create an inference of discrimination.'" *Id.* at 565 (emphasis added). Therefore, in accordance with more up-to-date guidance for discrimination cases, it's not so much as the *pleading* that must create an inference of discrimination as it is the *evidence*. *See, e.g.*, *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025); *Tynes v. Fla. Dep't Juv. Just.*, 88 F.4th 939, 946–47 (11th Cir. 2023); *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

pointing to an individual who is "similarly situated" goes to the heart of that all-important third prong of establishing a prima facie case for employment discrimination claims under *McDonnell Douglas*, and, as we know, the make or break of a prima facie case is not a standard by which to measure the legal sufficiency of a pleading asserting such claims. *Rice-Lamar*, 232 F.3d at 842–43; *Davis*, 2024 WL 4051215, at *3.

Third, the Air Force points to how Plaintiff "fails to describe how the denial of her request to telework two days a week" subjected her to an adverse employment action. *Rice-Lamar*, 232 F.3d at 842–43; [Doc. 11, p. 7]. Well, not to put too fine a point on it, but it's clear—even from Plaintiff's scant allegations—that she's saying the denial (or less favorable treatment) of the telework privilege afforded to her white co-workers and not to her because of her race and color "was 'materially adverse' to [a privilege or condition of] her employment." *Reeves*, 594 F.3d at 807 (quoting 42 U.S.C. § 2000e-2(a)(1)); *Int'l Bhd. of Teamsters*, 431 U.S. at 335 n.15; [Doc. 11, p. 7]. So, contrary to what the Air Force argues, the fact that Plaintiff's pleading "nowhere" makes allegations related to a prima facie case of discrimination cannot (at the pleadings stage) serve as a basis to dismiss her a race- and color-based disparate treatment claim under Title VII. Since the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss," the Court will not dismiss on the grounds presently suggested by the Air Force. *Swierkiewicz*, 534 U.S. at

511. In any event, when it comes to these types of cases, it must be remembered that even when an aggrieved employee fails to produce outright a valid comparator, the Eleventh Circuit has observed that such a failure "does not necessarily doom [that] plaintiff's case," even at the later stages of litigation. *Tynes*, 88 F.4th at 946–47.

For now, though, the Court's focus is through a Rule 12(b)(6) lens, and no matter how many allegations may or may not be present in a complaint, "a Title VII plaintiff, like any other plaintiff, must still satisfy the plausibility standard set forth in *Twombly* and *Iqbal*." *Horace*, 2024 WL 1174398, at *4 (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)). With that in mind and with any discussion of a comparator shoved to the backburner; to state race and color discrimination claims under Title VII, "a complaint need only provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Surtain*, 789 F.3d at 1246. "The complaint must satisfy the plausible-on-its-face standard, and the allegations must be sufficient to raise a right to relief above the speculative level." *Horace*, 2024 WL 1174398, at *4 (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010)).

Here, liberally construed, and taking Plaintiff's *thin* allegations as true with respect to her Title VII claims (as the Court must at this stage), *Twombly*, 550 U.S. at 572, and in the light most favorable to her, *Hawthorne*, 140 F.3d at 1370, there is enough to plausibly state a claim that the Air Force allowed "white" or "non-African descent" civilian employees to telework for two days per week but denied that privilege to

Plaintiff. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-16(a); [Doc. 1-5, p. 1]. To be clear, this ruling in no way means the Air Force actually discriminated against Plaintiff in violation of Title VII, it merely means she may—depending on her allegations in any forthcoming amended pleading—be entitled to offer evidence to support her discrimination claims.[7] *Scheuer*, 416 U.S. at 236.

## CONCLUSION

Unless and until Plaintiff files an amended pleading, the Court **GRANTS** the Air Force's motion to dismiss **in part** as follows. The Court **DISMISSES** Plaintiff's ADA claim for lack of subject-matter jurisdiction, and it **STRIKES** her conclusory Title VII-based harassment claim, **DISMISSING** it **without prejudice**. All other portions of the Air Force's motion to dismiss are **DENIED**. Administratively, the Court **DIRECTS** the Clerk of Court to **TERMINATE** Troy Meink, the Secretary of the Air Force; Kerri Fox; and Kimberly A. Harrison as parties to this lawsuit and to **AMEND** the case name to reflect "The United States Air Force" as the sole defendant. Plaintiff shall have through and including ***November 25, 2026***, to file an amended pleading or inform the Court of her intent to proceed with her current pleading subject to the rulings in this order.[8] *See Silberman*, 927 F.3d at 1132, *supra*.

---

[7] If Plaintiff chooses *not* to amend her pleading by November 25, 2026, only her Title VII disparate treatment claims for race and color will proceed to discovery as pled.

[8] For Plaintiff's convenience, the Court **DIRECTS** the Clerk of Court to send her a blank copy of the Court's standard form for employment discrimination actions bearing this case's civil action number: 5:26-cv-00209-TES.

**SO ORDERED**, this 10th day of November, 2026.

*S/ Tilman E. Self, III*

**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**